UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAWN CUNNINGHAM,

    Plaintiff,

v.                                             Case No. 8:12-cv-823-T-30TGW

CURTIS VIGNESS, et al.,

    Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants Vigness and Tucker's Motion for Summary Judgment ("motion") (Dkt. 24) with attachments, affidavits, and depositions (Dkts. 24-1 - 24-6, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34), and Plaintiff's Response to Summary Judgment Motion ("response") (Dkt. 36) with attachments (Dkt. 36-1). The Court, having reviewed the motion, response, the parties' submissions, and being otherwise advised in the premises, concludes that the motion should be granted in part and denied in part.

### INTRODUCTION

This is an action for damages arising out of an alleged excessive use of force by Defendants, Deputy Sheriffs Vigness and Tucker, in violation of the Fourth Amendment to the United States Constitution. Plaintiff contends that Deputy Vigness unnecessarily shot him with a taser, and Deputy Tucker used excessive force in shooting Plaintiff with his handgun. The issues before the Court on Defendants' summary judgment motion are

whether Plaintiff's constitutional claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 489 (1994), and whether Defendants are entitled to qualified immunity. The Court concludes that Defendants' summary judgment motion should be granted in part, because the claims against Defendants Tucker and Vigness are barred by *Heck*, and Defendant Vigness is entitled to qualified immunity, and denied in part, because Defendant Tucker is not entitled to qualified immunity.

## BACKGROUND

**I.      Allegations of Amended Complaint**

The Amended Complaint alleges the following pertinent facts: On September 30, 2008, Plaintiff was experiencing depression. He telephoned his family to tell them that he was having suicidal thoughts. Plaintiff's brother called 911 and informed the operator that Plaintiff was going to hurt himself, and asked the operator to send someone to Plaintiff's residence.

Plaintiff cut his left arm and was bleeding over the kitchen sink. Plaintiff's roommate, Adam Rafalski, called Plaintiff's brother and informed him of what had happened. Five Emergency Medical Technicians (EMTs) arrived at Plaintiff's house. Rafalski opened a door to the house, and the EMTs entered the living room. When Plaintiff saw the EMTs, he held a knife up to his neck and told them to leave. The EMTs exited the house. Subsequently, three deputies from the Pasco County Sheriff's Office entered the house. When Plaintiff saw the deputies, he again held the knife up against his neck and told the deputies to leave. The three deputies exited the house.

Plaintiff and Rafalski went into the living room, and Plaintiff locked the front door. Plaintiff looked out a window and saw fire trucks, an ambulance, and police vehicles in front of his house. Plaintiff returned to the kitchen and put his bleeding arm back over the sink. Rafalski followed Plaintiff into the kitchen and attempted to talk Plaintiff out of committing suicide. Plaintiff calmed down, and changed his mind about committing suicide.

Rafalski asked Plaintiff to give him the knife that was still in Plaintiff's hand. Plaintiff gave Rafalski the knife. Rafalski removed all knives that were in the kitchen. Rafalski exited the house to inform the deputies that he got the knife that Plaintiff had been holding, removed all knives from the kitchen, and that Plaintiff had calmed down and changed his mind about committing suicide.

Plaintiff heard the doorbell ring and went to open the door. Plaintiff was unarmed at that time. When he opened the door, Deputy Vigness was pointing a taser gun at him. Plaintiff started to close the door, but Deputy Vigness discharged the taser, striking Plaintiff in the chest. Plaintiff managed to shut and lock the door before falling to the floor as a result of the shock emitted by the taser. Plaintiff pulled the taser prongs out of his chest. Plaintiff was briefly incapacitated, but managed to get to his feet. He then checked to see that the front door was locked.

As Plaintiff turned to walk toward the living room, the front door was kicked open. Plaintiff turned to look back toward the door. At that moment, Deputy Tucker fired his handgun four times, striking Plaintiff twice - once in his right arm and once in his right shoulder. As a result, Plaintiff's right arm is permanently damaged and disfigured.

## II.   Deputies' Version of Facts

Both Vigness and Tucker were dispatched to Plaintiff's home, and were informed that there was a suicide threat (Dkt. 24-3 at p. 3). Fire rescue personnel were already at the scene, and were standing in Plaintiff's driveway when Tucker arrived (Dkt. 24-4 at p. 3). Rafalski told Tucker that there was a male in the house with a knife stabbing his own wrist, and that Tucker needed to get in the house right away (Id. at p. 4). Vigness responded to the scene shortly thereafter (Id.).

Vigness and Tucker approached the front door of the house (Id. at p. 5). Vigness had his taser in his hand, and Tucker had his handgun in his hand (Id.). While Vigness and Tucker were standing at the doorway, Deputy Maseda ran across the front yard and took up a position behind them holding a "super-sock" shotgun, a gun "dedicated for less lethal ammunition" which is "meant to inflict. . .pain and knockdown force that's not going to necessarily kill someone." (Dkt. 36-1 at pp. 8-11).

The deputies opened the front door and announced their presence as "Pasco County Sheriff's Office," and ordered Plaintiff to "come out with your hands up." (Dkt. 24-4 at pp. 6, 41). Eventually, a voice responded to the deputies using vulgarity and making statements such as "you better come in with a gun," and "you better shoot to kill." (Id. at p. 7; Dkt. 24-3 at pp. 5-6). As the deputies entered the house, they saw Plaintiff coming out from a back room with a knife in his right hand (Dkt. 24-3 at pp. 6-7; Dkt. 24-4 at p. 8). Plaintiff began walking toward the deputies (Dkt. 24-4 at p. 8; Dkt. 24-3 at p. 7). Vigness and Tucker ordered Plaintiff to drop the knife (Id.; Dkt. 36-1 at p. 12). Plaintiff, however, continued to

move toward the deputies with the knife in his hand (Dkt. 24-4 at pp. 8-9; Dkt. 24-3 at p. 7). Vigness yelled "taser," then fired the taser, striking Plaintiff in the chest and stomach (Dkt. 24-3 at p. 7; Dkt. 24-4 at p. 9; Dkt. 36-1 at pp. 12-13).

The taser caused Plaintiff to stumble then fall down into a crouched position (Dkt. 24-3 at p. 9). Plaintiff still had the knife in his hand (Id. at pp. 9-10; Dkt. 24-4 at p. 10; Dkt. 36-1 at p. 15). Plaintiff then stood up and began moving toward the deputies with the knife raised (Dkt. 24-4 at pp. 10-11; Dkt. 24-3 at p. 10). As Vigness and Tucker were backing away, Tucker raised his firearm and shot Plaintiff (Dkt. 24-4 at p. 12; Dkt. 24-3 at pp. 12-13; Dkt. 36-1 at p. 17). Plaintiff was approximately five feet away from Vigness at the time Tucker shot him (Dkt. 36-1 at p. 17). After Plaintiff was shot, Vigness and Maseda secured Plaintiff (Dkt. 24-3 at p. 13; Dkt. 36-1 at pp. 18-19).

### III.   State Court Conviction

As a result of the events on September 30, 2008, Plaintiff was charged by Felony Information with one count of aggravated assault on a law enforcement officer, namely Officer Vigness (Dkt. 24-2 at p. 1). In Florida, to prove the crime of aggravated assault on a law enforcement officer, the State must establish the following elements beyond a reasonable doubt: Plaintiff (1) made an intentional, unlawful threat by word or act to do violence to another person; (2) had the apparent ability to do violence; (3) did some act that created a well-founded fear that such commission of violence was imminent; (4) committed the assault with a deadly weapon; (5) the victim was a law enforcement officer; and (6) the law enforcement officer was engaged in the lawful performance of his duties. *Sullivan v.*

*State*, 898 So.2d 105, 108 (Fla.2d DCA 2005). Following a jury trial, the jury found Plaintiff guilty of aggravated assault on a law enforcement officer (Dkt. 24-2 at p. 2).

## SUMMARY JUDGMENT STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id*. Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

Defendants move for summary judgment based on the *Heck* doctrine and the doctrine of qualified immunity.

**I.    *Heck v. Humphrey***

Section 1983 plaintiffs may only "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" if they can demonstrate that the conviction or sentence has been invalidated. *Heck*, 512 U.S. at 486-87. *Heck* bars those claims that "if successful, would necessarily imply the invalidity of the conviction because they would negate an element of the offense." *Hughes v. Lott*, 350 F.3d 1157, 1160 n.2 (11th Cir. 2003). Courts must look both to the claims raised under § 1983 and to the specific offenses for

which the § 1983 claimant was convicted. *Vickers v. Donahue*, 137 Fed. Appx. 285, 290 (11th Cir. 2005) (unpublished opinion) (citing *Hughes*, 350 F.3d at 1160 n. 2).

In this action, Plaintiff alleges that he did not commit aggravated assault on a law enforcement officer. Specifically, Plaintiff alleges that he "was unarmed and never attacked or charged at Defendant Tucker or Vigness." (Dkt. 8 at p. 12). But the conviction for aggravated assault on a law enforcement officer establishes that Plaintiff threatened Deputy Vigness with a deadly weapon, creating a fear that violence was imminent. *See Sullivan*, 898 So.2d at 108. Therefore, Plaintiff's excessive force claims, which are based on the premise that both Vigness and Tucker's use of force were excessive because Plaintiff was unarmed and never threatened them in any way, contradict the conviction for aggravated assault on a law enforcement officer, which was based on the fact that the deputies were in fear of imminent violence because Plaintiff was moving toward them with a knife in his hand. Consequently, Plaintiff's excessive force claims are necessarily inconsistent with his conviction, and imply the invalidity of the conviction.[1] Accordingly, absent invalidation of the conviction, Plaintiff's claims are barred by *Heck*. *See Richards v. Dickens*, 411 Fed. Appx. 276, 278 (11th Cir. 2011) (unpublished). *See also Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) (a plaintiff's claim is barred by *Heck* despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction).

---

[1] For instance, Plaintiff's allegation that he was "unarmed" would by logical necessity negate the element that he "committed the assault with a deadly weapon."

**II.     Qualified Immunity**

Defendants argue that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 229 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "is an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

To be entitled to qualified immunity, an official must demonstrate he was acting within the scope of his discretionary authority. *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003). To overcome this immunity, a plaintiff must show that a reasonable official would understand that the action taken would violate a recognized right. *Pearson*, 555 U.S. at 229.

The discretionary authority analysis requires two inquiries: "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job related goal), (b) through means that were within his power to utilize." *See Holloman ex. rel Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). "In applying each prong of this discretionary function test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id*. at 1266.

There is no question, and Plaintiff does not dispute, that Vigness and Tucker were acting within the scope of their discretionary authority. Therefore, since they have satisfied the elements of discretionary authority, the burden shifts to Plaintiff to show that Vigness and Tucker violated his clearly established constitutional rights and that qualified immunity is not appropriate. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

A violation of the Constitution may be clearly established by either showing (1) a materially similar case; (2) pointing to a "broader, clearly established principle" that controls "the novel facts of the situation;" (3) or "demonstrating that the conduct involved in the case" so obviously violates "the constitution that prior case law is unnecessary." *Terrell v. Smith*, 668 F.3d 1244, 1255-56 (11th Cir. 2012).

Here, Plaintiff alleges that Vigness and Tucker used excessive or unreasonable force in apprehending him. "[A] claim of 'excessive force in the course of making [a] . . . 'seizure' of [the] person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard.'" *Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)) (alterations in the original). Such a test looks not to the motivation of the particular officer, but instead examines whether a reasonable officer would have taken the same action given the facts and circumstances confronting him. *Graham,* 490 U.S. at 397; *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) ("The question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer."). The Supreme Court has recognized that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion

or threat thereof to effect it." *Graham*, 490 U.S. at 396. Consequently, in determining whether an officer's use of force was objectively reasonable, thereby entitling the officer to qualified immunity, the court must consider several factors including: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Slicker v. Jackson*, 215 F.3d 1225, 1232-33 (11th Cir. 2000) (quoting *Moore v. Gwinnett County*, 967 F.2d 1495, 1498 (11th Cir. 1992) (quoting *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986))). A court should also consider "(1) the underlying crime's severity; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists arrest or attempts to flee." *Lafavors v. Jenne*, 2006 U.S. App. LEXIS 2633, 2006 WL 249544, at *1 (11th Cir. Feb. 2, 2006) (unpublished) (citing *Graham*, 490 U.S. at 396). Moreover, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. In light of all of these considerations, the assessment of a police officer's use of force is a highly factual inquiry.

For purposes of summary judgment, the Court must view the facts in the light most favorable to Plaintiff. Even doing so, however, the Court concludes that the illegality of Vigness's actions was not clearly established in September 2008.

In *Hoyt v. Cooks*, 672 F.3d 972 (11th Cir. 2012), the Eleventh Circuit Court of Appeals stated in pertinent part that:

> The inquiry into whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). The right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987). "We have said many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000) (quotations omitted). In determining whether a right is clearly established, we look to the precedent of the Supreme Court of the United States, of this Court, and of the relevant state's highest court. *McClish v. Nugent,* 483 F.3d 1231, 1237 (11th Cir. 2007).

*Id*. at 977.

Plaintiff has failed to produce any case law supporting his claim that Vigness's actions violated his clearly established constitutional rights. In *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004), Draper was "hostile, belligerent, and uncooperative," used profanity and yelled at the officer, and repeatedly refused the officer's orders during a traffic stop. *Id*. at 1278. The Eleventh Circuit concluded that the officer's "use of the taser gun to effectuate the arrest of Draper was reasonably proportionate to the difficult, tense and uncertain situation" that the officer faced during the traffic stop. *Id*. at 1278.

As in *Draper*, Vigness and Tucker encountered a volatile situation rife with danger. A 911 call was made because Plaintiff was seemingly attempting to commit suicide by cutting himself with a knife. When the EMTs entered Plaintiff's house, Plaintiff held a knife up to his throat and told the EMTs to leave. When the deputies first entered the house,

Plaintiff again held a knife to his throat and directed them to leave. The Amended Complaint alleges that Rafalski subsequently "went outside [Plaintiff's house] to explain to the deputies that he got the knife from the Plaintiff and that, he removed all the knives from the kitchen, and also, that the Plaintiff has calmed down and changed his mind about committing suicide" (Dkt. 8 at p. 10, ¶ 28). However, Plaintiff neither alleges, nor points to any evidence in the record that shows, that Rafalski actually told the deputies that Plaintiff no longer possessed or had access to a knife, and changed his mind about committing suicide. Rather, the evidence shows that Rafalski informed Tucker that Plaintiff was inside the house with a knife stabbing his wrist, and that Tucker "needed to get in the residence right away." (Dkt. 24-4 at p. 4; Dkt. 33 at p. 8).

Under those circumstances, Vigness's single application of the taser to subdue Plaintiff was not objectively unreasonable. Plaintiff was refusing to cooperate with officials, and presented an immediate, serious danger to himself. Moreover, there is no allegation that the tasing caused any injury to Plaintiff. Therefore, Plaintiff has failed to show that Vigness's use of force violated clearly established law. Accordingly, Vigness is entitled to qualified immunity.

The Court concludes, however, that Tucker is not entitled to qualified immunity. Viewing the facts in the light most favorable to Plaintiff, Plaintiff opened his front door, and Vigness shot him with a taser. Plaintiff managed to close and lock the door before he fell to the ground. As Plaintiff stood up and turned away from the door to walk to his living room, the deputies kicked open the front door. Plaintiff was not holding a knife at this time, and

he did not make any threatening moves toward the deputies. Rather, as he turned his head back to look at the door, Tucker fired his handgun three or four times, striking Plaintiff twice.

Eleventh Circuit precedent holds that the use of deadly force[2] against a person who poses no immediate threat to officers or others is unconstitutional. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1156-61 (11th Cir. 2005) (officer who fired a "Sage Launcher" at the head of a person who was threatening to kill himself with a knife, unconstitutionally used deadly force when person posed no immediate threat to officers or others).

Viewing the facts in the light most favorable to Plaintiff, the Court finds that *Mercado* provided Tucker with fair warning that his use of deadly force on Plaintiff on September 30, 2008, was unconstitutional. Accordingly, Tucker is not entitled to qualified immunity.

## CONCLUSION

In sum, Vigness, but not Tucker, is entitled to qualified immunity. This action, however, must be dismissed under *Heck*. Because Plaintiff could file a new action against Tucker, if and when his aggravated assault on a law enforcement officer conviction were overturned, the dismissal is without prejudice as to the claims against Tucker.

It is therefore **ORDERED AND ADJUDGED** that Defendants Vigness and Tucker's Motion for Summary Judgment (Dkt. 24) is **GRANTED** in part and **DENIED** in part as follows:

---

[2] "'[D]eadly force' means force that creates a substantial risk of causing death or serious bodily injury." *Harris v. Coweta County*, 433 F.3d 807, 821 (11th Cir. 2005) (citation omitted).

1.	This action is **DISMISSED** with prejudice as to Defendant Vigness because, even if Plaintiff invalidates his criminal conviction to surmount the *Heck* bar, Vigness still is entitled to qualified immunity. This does not apply to Defendant Tucker.

2.	This action is **DISMISSED** without prejudice as to Defendant Tucker because Plaintiff's claims are barred by the *Heck* doctrine. Plaintiff may re-file the claims against Defendant Tucker in a new action in the event he obtains an invalidation of his aggravated assault against a law enforcement officer conviction.

3.	The Clerk shall enter judgment stating, "The complaint is dismissed with prejudice as to Defendant Vigness, and without prejudice as to Defendant Tucker."

4.	The Clerk shall terminate any pending motions and close this case.

**DONE** and **ORDERED** in Tampa, Florida on May 1, 2013.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc
Copy to: Plaintiff *pro se*
	Counsel of Record

F:\Docs\2012\12-cv-823.msj 24.wpd